**In Re Phillip Leopold HIBBERT, and Ivy Hibbert, Debtors.**

**Bankruptcy No. 881–82069.**

United States Bankruptcy Court, E. D. New York, at Westbury.

Oct. 16, 1981.

Bernard Greco, Jericho, N. Y., for debtors.

Philip Aaron, P. C., Jericho, N. Y., for Emigrant Sav. Bank; Stuart Gelberg, Jericho, of counsel.

ROBERT JOHN HALL, Bankruptcy Judge.

### Background

On June 17, 1981, Phillip and Ivy Hibbert (the "Debtors") filed a joint petition under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301 *et seq.* (Supp. III 1979). Emigrant Savings Bank ("Emigrant") was scheduled as a secured creditor holding the mortgage on the Debtors' principal residence which was then in foreclosure. The Debtors listed a $7,000 default representing mortgage arrears of eighteen months which they proposed to cure through a thirty-two month plan. Emigrant objected to confirmation, *see id.* at § 1324, on the ground that the plan failed to provide for the payment of various expenses and legal fees incurred by them in the foreclosure and bankruptcy proceedings. In addition, objection was made regarding the appropriate interest factor necessary to equate the deferred payments with present value.

On August 18, 1981, a hearing was held to resolve these disputes. At the hearing, the following items were examined:

1. Eighteen (18) months mortgage arrears (which includes monthly principal, interest and escrow) . . . . . $6,706.92

2. Late charges . . . . . . . . . . . . . . . . . . . . . 138.00

3. Legal fees on foreclosure . . . . . . . . . . 350.00

4. Disbursements advanced on foreclosure . . . . . . . . . . . . . . . . . . . . . . 254.00

5. Legal fee to represent mortgagee in Chapter 13 proceedings . . . . . . . . . . 450.00

6. Legal fee for future service of discharging lis pendens . . . . . . . . . . . . 150.00

7. Inspection charges . . . . . . . . . . . . . . . . . 19.50

8. Interest necessary to equate deferred payments with present value . . . . . . . . . . . . . . . . . . . . . . . . . 1,457.82

At the outset, the Debtors conceeded items 1 and 2; and after the Court's determination that the amounts claimed in items 3 through 7 were reasonable, the Debtors conceded items 3, 4 and 5. The finding of reasonableness as to the amounts not-withstanding, the Debtors still disputed the appropriateness of items 6 (lis pendens) and 7 (inspection charges). Finally, the Court having determined that 12% interest compounded monthly on the decreasing balance to be the appropriate factor to equate the deferred payments with present value, a dispute arose as to the computation of this amount. Consequently, the Court allowed the parties to submit briefs on these issues.

### Discussion

■ Chapter 13 allows a debtor to formulate a plan under which his creditors will be paid varying percentages of their debts in payments usually deferred over not more than three years. *See id.* at §§ 1321, 1322.

■ In general, unsecured creditors are entitled to no less than they would receive under a Chapter 7 liquidation. *Id.* at § 1325(a)(4). Secured creditors, on the

other hand, are entitled to no less than the allowed amount of their claim. *Id.* at § 1325(a)(5). Finally, other than providing for the curing of a default, the plan cannot modify the rights of a holder of a claim secured only by a security interest in real property that is the debtor's principal residence. *Id.* at § 1322(a)(2), (5).

■ Applying the foregoing to the case at bar, the Court notes that Emigrant is the holder of a secured claim on the Debtors' principal residence. Consequently, the plan, other than curing the default, may not modify Emigrant's rights.

The Court further notes that the mortgage is guaranteed by the FHA. *See generally* National Housing Act, ch. 847, 48 Stat. 1246 (codified in scattered sections of 12, 41, 49 U.S.C.); 24 C.F.R. §§ 203.1 *et seq.* (1972). Under the terms of this guarantee, upon the mortgagor's default, the mortgagee may assign the mortgage to the FHA which will repay the mortgagee the unpaid principal, accrued and unpaid mortgage interest, and "[r]eimbursement for such costs and attorney's fees as the Commissioner finds were properly incurred in connection with the defaulted mortgage and its assignment to the Commissioner." *Id.* at § 203.-404. Furthermore, FHA regulations specifically allowed the mortgage instrument to provide for an additional 2% late charge, *id.* at § 203.25,[1] and present regulations require monthly inspections of property in default, 24 C.F.R. § 203.377 (1980). Finally, present FHA regulations would allow a mortgagor in default to reinstate his mortgage, but only upon his tender of all the above sums to the mortgagee. *Id.* at § 203.608.[2]

■ Therefore, had the Debtors not filed in bankruptcy, Emigrant would have been entitled to various items and expenses either from the FHA on assignment or from the mortgagor on reinstatement.[3] Based

---

1. The Debtors' mortgage so provides at paragraph 4.

2. In that the reinstatement regulation was enacted subsequent to the consumation of the mortgage loan, it is unclear whether the Debt-

ors have that right. In this case, however, the issue is purely academic.

3. Of course, in the alternative, Emigrant could have abandoned these rights to pursue the Debtors in state court. Its right to the fees in question under the mortgage instrument and

thereon, the Debtors conceded the appropriateness of most of the items in question. *See supra.* They still question, however, the fee for discharging the lis pendens and the inspection fees.

It seems clear to the Court, however, that these amounts were properly incurred in connection with the defaulted mortgage. *See* 24 C.F.R. § 203.377 (1980). Consequently, under the plain language of the regulation, *see* 24 C.F.R. § 203.404 (1972), they would appear to be recoverable. Furthermore, should that not be the case, the Court is of the opinion that it would be incumbent on the Debtors to establish that. *See In re Elkind,* 11 B.R. 473, 7 B.C.D. 1019, 1021 (Bkrtcy.D.Colo.1981). Their post hearing submission of a letter which purports to be from the Department of Urban Development is insufficient to that end. Aside from being hearsay, the Court has no way of knowing exactly what questions the letter purports to be answering.

Consequently, the Court finds items 1 through 7 presently due and owing to Emigrant.

### Present value

■ Having determined that $8,068.42 is presently due and owing and mindful that the plan cannot modify Emigrant's rights, it follows that for the Debtors to cure their

default, they must presently tender the full amount due; or, in the alternative, tender a greater amount in deferred payments such that the total of such deferred payments is equivalent to receipt of $8,068.42 today. *In re Gregory,* 8 B.R. 256 (Bkrtcy.S.D.N.Y. 1981); *In re Smith,* 4 B.R. 12 (Bkrtcy.E.D. N.Y.1980). Based on the interest rates prevailing in today's market, this Court has been awarding an interest factor of 12% compounded monthly on the decreasing balance. Based on that factor, the interest on $8,068.42 to be deferred over thirty-two months is $1,401.98.[4]

### Conclusion

Therefore, for the thirty-two month plan to be confirmed, it must provide for the payment of $9,470.40 to Emigrant. Settle Order on three (3) days notice.

state law, however, is problematic at best. *See, e. g.,* N.Y.Civ.Prac.Law §§ 8302–8303 (McKinney 1981); *Inter-City Investor Corp. v. Kessler,* 56 A.D.2d 645, 391 N.Y.S.2d 894 (2d Dep't 1977); *Lincoln First Bank v. Thayer,* 102 Misc.2d 451, 423 N.Y.S.2d 795 (Sup.Ct.1979); 8 Weinstein-Korn-Miller, *New York Civil Practice* ¶ 8303.02 (1980); *cf. In re Gregory,* 8 B.R. 256 (Bkrtcy.S.D.N.Y.1981).

4. The $1,401.98 can be calculated by referring to an amortization table. *See, e. g.,* Financial Publishing Company, *Financial Constant Percent Amortization Tables* 241–87 (1975). Referring to page 274, we see that the repayment of the sum of $1,000.00 at 12% interest for 32 months requires a monthly payment of principal and interest in the sum of $36.68. This sum is multiplied by 8.06842 in order to determine the monthly payment of principal and interest on the sums due and owing. This monthly

payment amounts to $295.95. Said sum of $295.95 is multiplied by 32 in order to determine the total sum to be repaid. That sum equals $9,770.40. From this sum, we deduct the principal $8,068.42 thereby leaving interest of $1,401.98.

For the more mathematically adventuresome, R, the monthly annuity necessary to amortize the "loan" can be calculated directly from the formula:

$$R = A \frac{i}{1-(1+i)^{-n}}$$

where: A = the present value of the annuity
i = the rate of interest per interest period
n = the number of interest periods.

Of course, were the plan to provide for Emigrant to be paid in less than thirty-two months, the interest charge would be proportionately less.