In re Clifford E. ANDERSON and Sandra D. Anderson, Debtors.

Bankruptcy No. 87–00725–B.

United States Bankruptcy Court, W.D. Oklahoma.

June 2, 1987.

David Eldridge, Oklahoma City, for the debtors.

Timothy P. Kelly, Oklahoma City, for Midland Mortgage Co.

MEMORANDUM DECISION AND ORDER

PAUL B. LINDSEY, Bankruptcy Judge.

Prior to the filing of the petition in this Chapter 13 case, the creditor, Midland Mortgage Co., recovered judgment foreclosing a mortgage given by debtors. A

Sheriff's sale was scheduled, but debtors filed their petition herein on the day preceding the date set for the sale. The automatic stay provisions of Section 362 of the Bankruptcy Code, 11 U.S.C. § 362, prevented the sale or any further proceedings from taking place. Debtors have proposed a plan pursuant to which all arrearages under the note will be repaid in approximately 17 months, the regular payments under the note will continue to be made and it will thereafter be paid in accordance with its terms.

The creditor has moved to dismiss the case or convert it to a case under Chapter 7, contending that the judgment of foreclosure effected the acceleration of the note, making the entire amount due and payable and that the bankruptcy court may not reverse this result.

Under 11 U.S.C. § 1322(b)(5), a plan under Chapter 13 may

provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

The creditor contends that by reason of the acceleration and reduction of the note to judgment, there is no payment due "after the date on which the final payment under the plan is due," and that therefore debtors may not avail themselves of § 1322(b)(5) to de-accelerate the prepetition judgment.

The issue thus before the court has been extensively briefed by the parties, who have suggested that it is one of first impression in this district.

It appears that the courts have adopted at least five views on this issue. It has been held that de-acceleration and reinstatement are not available after the mortgagee has exercised its right to accelerate, whether or not a judgment has been obtained. *See In re LaPaglia*, 8 B.R. 937 (Bankr.E.D.N.Y.1981).

A second view is that de-acceleration and reinstatement are available after the note and mortgage have been accelerated, but

not after a judgment of foreclosure has been entered. *See In re Pearson*, 10 B.R. 189 (Bankr.E.D.N.Y.1981).

A third view is that the debtor may cure a default even after a state court judgment of foreclosure has been entered, provided no sale has taken place. *See In re Acevedo*, 26 B.R. 994 (E.D.N.Y.1982).

A fourth view is consistent with the third, allowing cure and reinstatement after judgment, without specifically addressing the question of whether a sale has taken place. *DiPierro v. Taddeo (In re Taddeo)*, 685 F.2d 24 (2nd Cir.1982).

The fifth view is that de-acceleration and reinstatement are available even after a sale pursuant to a foreclosure judgment, so long as the debtor still has a right of redemption at the time he files his bankruptcy petition. *See In re Chambers*, 27 B.R. 687 (Bankr.S.D.Fla.1983).

It is noted that the decision of the court of appeals in *Taddeo, supra,* settled the law in that circuit. The district court in *Acevedo, supra,* cited and quoted extensively from *Taddeo,* in part as follows:

When Congress empowered Chapter 13 debtors to "cure defaults" we think Congress intended to allow mortgagors to "de-accelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate".... Secondly, we believe that the power to "cure any default" granted in § 1332(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages in § 1322(b)(2) because we do not read "curing defaults" under (b)(3) or "curing defaults and maintaining payments" under (b)(5) to be *modifications* of claims. [emphasis as in original]

*Taddeo, supra,* 685 F.2d at 26–27; *Acevedo, supra,* 26 B.R. at 996.

Just as the district court in *Acevedo* considered itself bound by the court of appeals decision in *Taddeo,* it would appear that the more restrictive views expressed in earlier decisions within that circuit would not be reaffirmed if they arose after *Taddeo.*

In their briefs, both parties herein cited *In re Clark,* 32 B.R. 711, Bankr.L.Rep. (CCH) ¶ 69341 (W.D.Wisc.1983), as authority for the proposition that the right to cure and reinstate did not survive the entry of a state court judgment of foreclosure.

*Clark* was a district court decision in which a bankruptcy court's confirmation of a Chapter 13 plan calling for the curing of arrearages and reinstatement of installment payments was reversed and remanded with instructions to deny confirmation of the plan. As debtors have noted in their supplemental brief, and as counsel for creditor informally advised this court, the district court decision in *Clark* was subsequently reversed and the bankruptcy court's original order confirming the plan was affirmed. *In re Clark,* 738 F.2d 869 (7th Cir.1984).

The court of appeals, applying Wisconsin law, notes that despite the judgment of foreclosure, the debtors still had an interest in the property at the time they filed their petition in bankruptcy, such that the property was a part of the estate under 11 U.S.C. §§ 541 and 1307. Wisconsin law provides a mortgagee only a lien on the mortgaged property even after a judgment of foreclosure is entered, and neither equitable nor legal title passes until the foreclosure sale is held. The court discusses the prohibition against modification of the rights of a holder of a secured claim secured only by a security interest in real property that is the debtor's principal residence, contained in 11 U.S.C. § 1322(b)(2), in conjunction with the provision for the curing of defaults within a reasonable time under § 1322(b)(5), *infra.*

The opinion contains an extensive discussion of rules of statutory construction as those rules relate to the terms "modify" and "cure" contained in § 1322. The court concludes that the power to "cure" necessarily includes the power to de-accelerate the payments on the note and that such de-acceleration is not a modification banned by § 1322(b)(2), but rather a permissible and necessary concomitant of the power to cure defaults. The court cites *Taddeo, supra,* and *Grubbs v. Houston First Ameri-*

*can Savings Association,* 730 F.2d 236 (5th Cir.1984) (en banc).

The court then continues with a lengthy discussion of the legislative history of § 1322. The court concludes that the power to cure a default under § 1322(b)(5) permits a debtor to de-accelerate payments under a note secured by residential property mortgage notwithstanding the prohibition against modification found in § 1322(b)(2). Although the Chapter 13 petitions in both *Grubbs* and *Taddeo* were filed before the entry of a judgment of foreclosure, the *Clark* court opines that the existence of such a judgment would not alter the result of those cases. The court again notes that under Wisconsin law a judgment of foreclosure does nothing but judicially confirm the acceleration and that "in Wisconsin such a judgment adds nothing of consequence as far as § 1322(b) is concerned." *Clark,* 738 F.2d at 874.

Finally, the court in *Clark* responds to the creditor's argument that as a result of acceleration, the debt had to be paid in full during the term of the plan if at all, as there was no longer a secured claim on which the last payment was due after the date on which the final payment under the plan was due, as required by 11 U.S.C. § 1322(b)(5). The court finds the argument unpersuasive, and concludes its opinion as follows:

> Most notes provide that the lender can accelerate the payments upon any default, and some provide for automatic acceleration. In either case it is probable that acceleration would occur before the debtor could file a chapter 13 petition. The Bank's construction would render (b)(5)'s preservation of the ability to cure defaults all but meaningless. At the very least, the Bank's construction would encourage debtors to file bankruptcy petitions at the earliest possible moment rather than attempt to work out their financial problems short of judicial proceedings. We do not think that Congress intended cure under (b)(5) to be unavailable to all but the fleet of foot, and we therefore hold that we are to look to the date of the last payment *under*

*the note* rather than after acceleration has occurred. The result of this is that the Clarks' plan did nothing that is not permitted by § 1322(b). The decision of the district court is reversed and the bankruptcy court's order confirming the plan is affirmed. [emphasis as in original]

*Clark, supra,* 738 F.2d at 874.

In Oklahoma, as in Wisconsin, title to mortgaged premises remains in the mortgagor, and the mortgagor is not divested of title until his right of redemption is foreclosed. *See Coursey v. Fairchild,* 436 P.2d 35 (Okla.1967). This right is exercisable at any time between default and confirmation of the Sheriff's sale. *Lincoln Mortgage Investors v. Cook,* 659 P.2d 925 (Okla. 1982); *Mills v. Reneau,* 411 P.2d 516, 520 (Okla.1965); Okla.Stat. 42, §§ 11, 18 (1981).

As has been suggested by the parties, this court has found no direct authority in this district, or in the Tenth Circuit, on the issues raised herein. A review of the decided cases espousing the disparate views on the issue makes it clear to this court that the more recent, and more compelling, authority, is represented by the court of appeals decisions in *Taddeo* and *Clark, supra.* Thus, this court holds that a Chapter 13 plan proposing to cure defaults in a residential mortgage within a reasonable time and to continue making periodic payments in accordance with the original loan instruments, may be confirmed, notwithstanding the entry of a judgment of foreclosure prior to the filing of the Chapter 13 petition.

In this case, the debtors propose to cure the default over a period of seventeen months, while continuing to make the payments pursuant to the mortgage note. It is this court's view, and it so holds, that in the circumstances of this case, a period of seventeen months within which to cure the default is entirely reasonable.

The court having concluded that the curing of defaults, de-acceleration and reinstatement are permitted by § 1322(b)(5) and that the time within which the defaults are to be cured is reasonable, and there

being no other objections to confirmation of the plan, the same should be confirmed. The court will therefore execute an order of confirmation of the plan, to be prepared and submitted to the court forthwith by the Chapter 13 standing trustee.